Elana Gilaad (EG-4212)
FORD & HARRISON LLP
100 Park Avenue, Suite 2500
New York, NY 10017
Phone:  212.453.5900
Fax:  212.453.5959
*Attorneys for Defendant Polk Theatre, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JFP TOURING, LLC,<br><br>        Plaintiff,<br><br>       -against-<br><br>POLK THEATRE, INC.,<br><br>        Defendant. | Civil Action No.:  07-3341 (CM)(RLE)<br><br>**AFFIDAVIT OF LESLIE SIKORA IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER VENUE**<br><br>Document Electronically Filed |

**[TEXT OF AFFIDAVIT APPEARS ON FOLLOWING PAGE]**

## AFFIDAVIT OF LESLIE SIKORA

COUNTY OF POLK        )
                       )ss.:
STATE OF FLORIDA      )

BEFORE ME, the undersigned authority, personally appeared Leslie Sikora, who, after first being duly sworn, deposes and states that she is over 18, and competent to testify as to the following matters which she has personal knowledge and which she believes to be true:

1.     My name is Leslie Sikora; I am the Executive Director for the Polk Theatre.

2.     I have been employed in this position since 2003.

3.     The Polk Theatre is a Florida, not-for-profit corporation which owns one piece of property -- a building constructed in Lakeland, Polk County, Florida, in 1928 as a show place for vaudevillian performances and movies during the "golden age" of theatre in the United States.

4.     While the Polk Theatre changed ownership over the years after 1928, in the 1980s the Polk Theatre was purchased by a group of citizens of Polk County, Florida, to be renovated, refurbished, preserved and maintained as a non-profit, cultural center of the Arts in Polk County, Florida.

5.     Over the next twenty (20) years, the Theatre was painstakingly renovated and restored to reflect the history of the Arts in Polk County.

6.     The Polk Theatre is currently listed in the National Register of Historic Places, and is solely supported by revenue from films, performing arts sponsorships and ticket sales, rentals, fundraisers and memberships.

7.     The Polk Theatre is primarily maintained and operated by a full-time staff of three (3) people: myself (Executive Director), an Administrative Assistant and a Technical Director.

8.     The remaining functions of the Theatre are serviced by five (5) part-time

personnel and volunteers hired on an as needed basis, depending on whether an event is scheduled during a particular week.

9.    The Polk Theatre does not conduct business outside of Polk County, Florida.

10.    Annually, the Polk Theatre's primary source of revenue is it performing arts series where the Theatre books approximately six (6) live performances of small plays, musicals, concerts and/or comedy acts which are presented over an eight (8) month period, generally between September and April.

11.    I am solely responsible for booking shows for the performing arts series on an annual basis.

12.    I personally conduct discussions and negotiations for booking performances over the telephone, by fax, mail and e-mail between the touring companies and the Theatre, for performances which are all scheduled to take place in Polk County, Florida.

13.    In August 2006, I needed to replace a cancelled show prior to the start of the 2006-2007 performing arts series season.

14.    I heard that "*On Golden Pond*" (hereinafter "the Show") was touring, so I looked up information on the Internet and contacted the company listed by e-mail to inquire about the Show.

15.    Between August 2006 and January 2007, discussions occurred via telephone, mail and electronic communications about whether the Show could play at the Polk Theatre.

16.    The Show was a large production and our Theatre has limited facilities to handle such a production. However, after providing the physical and technical specifications of the Theatre to the Show's representatives, AVID Touring Group, they assured me the Polk Theatre could handle the Show with only minimal alterations to the Show. I was advised by AVID there

would be no alterations to the Theatre required to house the Show. This issue was very important because any additional expenses incurred by the Theatre would cause the Show to incur a loss, which the Polk Theatre could not afford.

17.    All of my communications were with AVID Touring Group, their marketing representative in Ohio, and their technical representatives at locations unknown to me between August 2006 and February 2, 2007. In fact, I never heard from or spoke with any representative of JFP Touring, LLC, until after it was clear the Theatre could not handle the Show.

18.    At no time did I or any representative of the Polk Theatre travel to New York or otherwise personally enter New York concerning the Show.

19.    In fact, all discussions were conducted electronically, solely between AVID representatives and myself.

20.    I was, at all times related to the transaction involving the Show, physically present in Polk County, Florida.

21.    I have personally received and reviewed a copy of the Complaint and Summons in this case (attached hereto as Exhibit A).

22.    In October 2006, I was presented with an Engagement Memorandum (attached hereto as Exhibit B) which was mailed to me in Polk County, Florida.

23.    I was informed the Engagement Memorandum was a "boilerplate" document that was meant to outline some of the terms of the Show between AVID and the Theatre.

24.    I was told the Engagement Memorandum was just an outline of some of the production terms, and that if I had any changes, I should note them in the document and any changes would be incorporated in an actual Engagement Agreement which was to be sent later and was to include all of the terms involved in having the Show in Polk County.

25.     I changed some of the terms in the Engagement Memorandum, signed it in Polk County, Florida, and mailed it back to AVID.

26.     I did not receive the 28-page Engagement Agreement until nearly 2 months later. Neither I nor AVID signed the Engagement Agreement.

27.     Although I was hopeful we could have the Show at the Polk Theatre, numerous issues arose which were not disclosed to me during the discussions that would have cost the Theatre thousands of dollars to correct  to hold the Show.  We simply could not afford to address the issues without losing substantial money, even if we were able to sell every seat in the house.

28.     The Theatre never paid any money or deposit to AVID or JFP Touring, LLC, in New York, or anywhere else, regarding the Show.

29.     The Polk Theatre does not own any property outside the state of Florida, has no bank account outside of Florida, has no offices outside of Florida and conducts no business outside of Florida.

30.     If we are required to defend this case in New York, I believe we could face insolvency because of the high costs to mount a defense in a place over a thousand miles from our sole place of business.

I have read the foregoing Affidavit and swear under penalty of perjury under the laws of Florida that it is true and correct based on my personal knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

Leslie Sikora

SWORN TO AND SUBSCRIBED before me this 26th day of April, 2007 by Leslie Sikora, who is ✓ personally known to me, or __ who has produced _____ as identification.



NOTARY PUBLIC

MARIA THOMAS

Printed Name
My Commission Expires: *12 July 2009*

TAMPA:227731.1

# EXHIBIT A

04/18/07  08:04pm  P. 002

NEW YORK
COUNTY CLERK'S OFFICE

ʳAPR – 5 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x

JFP TOURING, LLC,

                                        Plaintiff,

              -against -

POLK THEATRE, INC.,

                                        Defendant.

----------------------------------------------------------------x

**SUMMONS**

Index No. **601130/07**

Plaintiff designates New York
County as the place of trial

The basis of venue is:
Plaintiff's Residence

**TO THE ABOVE NAMED DEFENDANT(S):**

    **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this Action and
to serve a copy of your Verified Answer or, if the Verified Complaint is not served with this
Summons, to serve a Notice of Appearance upon Plaintiffs' attorneys within twenty (20) days after
the service of this Summons, exclusive of the day of service, or within thirty (30) days after service
is complete if this Summons is not personally delivered to you within the State of New York. In case
of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded herein.

    The nature of the action, the relief sought and the sum of the money for which judgment may
be taken in case of the default are as follows: breach of contract, fraudulent misrepresentation;
$100,000.00 plus interest in compensatory damages and $300,000.00 plus interest in punitive
damages.

Dated: New York, New York
        March 27, 2007

                                        Yours, etc.,

                                        _____
                                        **LESLIE H. BEN-ZVI, ESQ.**
                                        *Attorney for Plaintiff*
                                        1790 Broadway – 10ᵗʰ Floor
                                        New York, NY 10019
                                        (212) 719-5300 / 666-6656
                                        Leslie@BenZviLaw.com

Served A True Copy
Date 4.18.07 Time 1.30 AM/PM
Served By Sandra K. Croft #CA242
Certified Process Server

04/15/07  05:04pm  P. 009

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------x

JFP TOURING, LLC,                              **VERIFIED COMPLAINT**

                          Plaintiff,           Index No. _____

            -against -

POLK THEATRE, INC.,

                          Defendant.

-----------------------------------------------------------------x

Plaintiff JFP TOURING, LLC, by its attorney, LESLIE H. BEN-ZVI, ESQ., respectfully
alleges as follows:

1.      Plaintiff JFP TOURING, LLC ("Plaintiff") is a New York Limited Liability Company
with offices located at 1501 Broadway, Suite 2003, New York, NY 10036.

2.      Defendant POLK THEATRE, INC. ("Defendant") is, upon information and belief,
a Florida Corporation with offices located at 127 South Florida Avenue, Lakeland, FL 33801.

3.      Plaintiff is a theatrical producer and owns the rights to produce the play *On Golden
Pond.*

4.      Avid Touring Group, Ltd. is the exclusive agent through which Plaintiff, as principal,
produces and books performances of *On Golden Pond* at theatres throughout the United States.

5.      Between approximately mid-August 2006 and September 18, 2006, Plaintiff and
Defendant negotiated the terms of an agreement by which Plaintiff would produce and Defendant
would present *On Golden Pond* at Defendant's theater in Lakeland, Florida.

6.      On or about September 18, 2006, following approximately one month of negotiations
as to the terms and conditions of said engagement, Plaintiff and Defendant reached a meeting of the

1

minds whereupon Plaintiff sent Defendant an *Engagement Memorandum* ("the Agreement") dated

September 18, 2006, which codified the numerous terms and conditions negotiated by Plaintiff and

Defendant.

      7.     The Agreement expressly set forth, *inter alia,* the following terms and conditions

which had been negotiated by the parties:

| | | |
|---|---|---|
| A. | Presenter: | Defendant would be the presenter of *On Golden Pond* |
| B. | Venue | The venue at which *On Golden Pond* would be presented would be the Polk Theatre in Lakeland, Florida |
| C. | Load-In | The load-in would take place on Wednesday, February 28, 2007 |
| D. | Engagement Period | Two performances of *On Golden Pond* would take place on Wednesday, February 28, 2007 |
| E. | Performance Schedule | *On Golden Pond* would be performed at 3:00 pm and 8:00 pm. on Wednesday, February 28, 2007. |
| F. | Engagement Terms | (i) Defendant would pay Plaintiff (i) the sum of $45,000.00, (ii) Ten (10%) Percent of the Net adjusted Gross Box Office Receipts for the two performances and (iii) Sixty (60%) Percent of the Net Adjusted Gross Box Office Receipts for the two performances. |
| | | (ii) A deposit in the amount of $22,500.00 would be paid to Plaintiff by Defendant on or before January 29, 2007 by wire transfer and would be deemed to be an advance against the aforementioned $45,000.00 |
| | | (iii) The balance of $22,500.00 would be paid at 3:00 pm on February 28, 2007, *i.e.,* prior to the opening curtain of the matinee performance of *On Golden Pond* on February 28, 2007. |

|     |     |     |
| --- | --- | --- |

 

(iv)   The aforementioned payment of Ten (10%) Percent of the Net adjusted Gross Box Office Receipts for the two performances would be paid at the intermission of the evening performance of *On Golden Pond* on February 28, 2007.

(v)   The aforementioned payment of Sixty (60%) Percent of the Net Adjusted Gross Box Office Receipts for the two performances would be paid at the intermission of the evening performance of *On Golden Pond* on February 28, 2007.performances.

G.   **Bank Information**   The aforementioned wire transfers to be issued to Plaintiff by Defendant were to be sent to Plaintiff's bank, JPMorgan Chase Bank, Ground Floor, 1 Chase Manhattan Plaza, New York, NY 10081 and were to be directed to Plaintiff's account number # 1512-0848-1065

H.   **Expenses**   The parties incorporated by reference the following approved expenses as set forth on Schedule A to the Agreement:

| | |
| --- | --- |
| Stagehands/Technical Services | $7000.00 |
| Utilities | $150.00 |
| Playbill Printing | $1000.00 |
| Cleaning | $150.00 |
| General Expenses/Theatre Rental | $1200.00 |
| Hospitality | $500.00 |
| Hotel | $300.00 |
| House Manager | $264.00 |
| Advertising | $2000.00 |
| | **$12,564.00** |

I.   **Star Requirements:**   The parties agreed that per the Technical Requirements Rider, all star requirements would be a Defendant Expense.

Defendant would provide two (2) one-bedroom suites (one suite for each star) in a First Class deluxe accommodation for the duration of the stay during the Engagement. Each suite was to have a separate sleeping room from the parlor and all accommodations were to be approved by the company manager.

3

Defendant would provide two (2) private star dressing rooms, both of which would contain a full bathroom, refrigerator, cot/sofa, fully lighted mirrors, chairs, coffee and tea service, sodas, and non-carbonated bottled water on ice as outlined in the Technical Requirements Rider. A fruit plate was to be provided on the Opening Night performance. If there was a private shared lounge between the two star dressing rooms, then all hospitality items could be placed in the lounge to be shared by the stars.

Defendant would provide limousine or Town Car transportation to and from airport, to the hotel, to and from hotel to theatre, and to and from all press events as outlined in Technical Requirements Rider.

J.  Advertising Copy: Not to exceed 15% on approved electronic, print, and outdoor advertising only. No commission on production or trade.

K.  Program Copy: The cost of printing the Company's 9.5-pages of program copy will be included in the local fixed expenses.

L.  Ticket Prices: The parties incorporated by reference, the ticket prices set forth on Schedule B to the Agreement. The parties agree as follows: The Box Office manifest would reflect all seats in the theatre; no seats would be held off the manifest, so-called "Corporate seats" and "Donor seats" etc., must appear on the Box Office manifest and be included in the calculation of gross box office receipts at full-value of the applicable seating tier. Defendant informed Plaintiff that there were One Hundred (100) kills/obstructed view seats, which would not be utilized, and that patron (paid or comp) would be seated in said seats. The parties further agreed that the date on which tickets would go on sale to the public was yet to be determined.

M.  Discounts: The parties incorporated by reference the following discounts as indicated on Schedule B to the Agreement. Notably, Defendant made handwritten, initialed changes upon the Agreement before returning it to Plaintiff.

Section 1    690 seats @ $38.00 for a total of $26,220.00
Section 2    262 seats @ $27.00 for a total of  $7,074.00
Section 3    352 seats @ $20.00 for a total of  $7,040.00

Gross Potential:                                $80,668.00

4

N.   Deductions:
The parties incorporate by reference Schedule B for approved deductions and agreed as follows: not more than one (1) type of percentage sales commission would be charged on any one (1) ticket and sales commissions would be calculated on ticket prices net of restoration charges and taxes, if any.

For purposes of Group Commissions, the parties agreed that a group would be defined as a minimum of ten (10) tickets at one performance, which were purchased by a single customer and that there would be no "bundling" of tickets from various performances or different buyers in determining a group minimum.

O.   Complimentary, Press Trade, or House Tickets:
There would be no complimentary or trade tickets of any kind without the prior written approval of Plaintiff or Plaintiff's representative.

The parties would each receive four (4) complimentary tickets for Opening Night and two (2) complimentary tickets for all other performances. Plaintiff must approve any additional complimentary tickets in writing in advance.

P.   Company House Seats:
Plaintiff required Twenty (20) house seats per performance for purchase in the center Orchestra Section Premium Seats under 48 hour hold, to be sold at regular box office prices.

Q.   Advertising Budget:
The weekly advertising budget would be as indicated on Schedule A unless otherwise approved in writing by Plaintiff of Plaintiff's national press representative. All other marketing expenses would be subject to the prior written approval of Plaintiff or Plaintiff's national press representative. Only those advertising and promotional materials furnished by Plaintiff could be used for the Engagement; any proposed changes would be subject to the prior written approval of Plaintiff or Plaintiff's national press representative.

R.    Marketing:    The advance sale timeline and preliminary marketing campaign had to be submitted to Plaintiff representative within 30 days of public or private announcement. The advertising budget and marketing plan had to be submitted within 30 days of the on-sale and are subject to the prior written approval of Plaintiff's national press representative.

Excepting Defendant's season brochure which would be sent only to previous series subscribers, Defendant agreed not to advertise the Engagement until after December 10, 2006.

Defendant would submit its marketing plans and advertising budget to Plaintiff's national press representative, Anita Dloniak, tel: (216) 398-3931, fax: (216) 661-4645 and e-mail: anitad@stratos.net.

S.    Technical Rider:    Attached to the Agreement was the preliminary Technical Rider as of August 9, 2006, which was subject to change due to local conditions. Defendant expressly agreed to the terms of said attached Technical Rider.

Any Additional Costs due to local conditions would be a Fixed Engagement Expense.

T.    Special Provisions:    The form and manner of billing credits and sponsors on tickets would be determined by Plaintiff and Defendant would promptly and fully comply with said determination. Ticket stock would be printed as follows: "Show Sponsor Name TBA Presents ON GOLDEN POND".

Plaintiff would have the right to purchase seats for the tour sponsor at regular box office prices.

There would be no commission charged for any group booked by or on behalf of a company member through the company.

U.    Repeat Engagements:    Nothing in the agreement would obligate Plaintiff to afford subsequent presentation rights to Defendant.

V.    Booking Agent:    It was expressly agreed that Avid Touring Group, Ltd. was authorized to act as Plaintiff's designee on Plaintiff's behalf, but that Avid Touring Group, Ltd. was not a producer or presenter of the Production or a party to the Agreement and that Avid Touring Group, Ltd. was not be held responsible by Defendant for any of Plaintiff's obligations under the

6

Agreement, or by Plaintiff for any of Defendant's obligations under the Agreement.

W.    Prevailing Terms:    In the event the Agreement, Schedules and/or Technical Rider conflicted with any terms contained in any of Defendant's riders and/or addenda, the terms of the Agreement, Schedules and/or Technical Rider would prevail over Defendant's riders and/or addenda.

8.    Between September 18, 2006 and October 27, 2006, Plaintiff and Defendant engaged in further negotiations and clarifications with regard to the aforesaid terms.

9.    On October 19, 2006, Plaintiff sent Defendant an email which inquired whether Defendant, who had not returned the signed Agreement, was "bailing on this engagement." Defendant responded as follows:

> Absolutely not . . . Maybe you should know that we have an excellent reputation never cancelling shows...EVER!!! You would not know that as we haven't worked together before. You will never have to lose confidence with us as a client.

10.    By October 24, 2006, Defendant advised Plaintiff that it (i) had already printed a brochure for its season ticket holders that included a listing for *On Golden Pond* plus (ii) had already begun to sell single tickets for *On Golden Pond.*

11.    On or about October 27, 2006, Plaintiff, by its Executive Director, Leslie A. Sikora, (i) made handwritten changes to the 'Company House Seats' section and to Schedule B, (ii) signed the Agreement at the end thereof under the words: "ACCEPTED AND AGREED" and (iii) returned the Agreement, Schedule A, Schedule B and the Technical Rider to Defendant.

12.    Following Plaintiff's receipt of the executed Agreement, the following took place:

(i)    Plaintiff planned other aspects of the *On Golden Pond* Tour including, but not limited to, the routing of other performance dates around the February 28, 2007 performances at Defendant's theatre;

(ii)    Plaintiff neither sought nor accepted other *On Golden Pond* bookings for February 28, 2007;

7

04/19/07  05:04pm  P. 010

(iii)  *On Golden Pond* bookings that were geographically inconsistent with the February 28, 2007 performances at Defendant's theatre were neither sought nor accepted;

(iv)  Plaintiff incurred such unrecoupable expenses such as hotel reservations and site surveys.

13.  On or about December 7, 2006, Plaintiff sent Defendant four copies of a proposed agreement which did not modify any of the terms of the Agreement that had already been signed and that simply added certain additional boilerplate language as the following: (i) box office income reconciliation, (ii) Defendant's obligations regarding theatre operation, (iii) promotion and advertising, (iv) insurance.

14.  On January 5, 2007, Defendant sent Plaintiff a copy of a newspaper advertisement for *On Golden Pond* that Defendant had designed and planned to run in the local Lakeland, FL newspaper.

15.  On January 12, 2007, Defendant asked Plaintiff to (i) forward information to Defendant to be printed in the February 28, 2007 programs and (ii) to send Defendant three movie-size posters of *On Golden Pond* so that Defendant, which occupies a movie palace, could display the same in conjunction with the February 28, 2007 production of *On Golden Pond*.

16.  On or about January 19, 2007, Defendant emailed Plaintiff a copy of a January 9, 2007 cover letter that Defendant alleges to have sent Plaintiff on January 9, 2007. Said cover letter was once again signed by Defendant's Executive Director, Leslie Sikora, and purported to enclose "four (4) executed copies of the [December 7, 2006] Agreement for *On Golden Pond* appearing at our theatre February 28, 2007 for two shows."

17.  Defendant did not, however, include *any* copies of any such agreements with either the aforementioned January 9, 2007 letter or the January 19, 2007 email.

8

18.    On January 22, 2007, Defendant sent Plaintiff an email that the four copies of the December 7, 2006 agreement had been lost, had just been located and were now being sent to Plaintiff via Federal Express for delivery on January 23, 2007.

19.    On January 26, 2007, at Plaintiff's own expense, Plaintiff conducted a site survey of Defendant's theatre with the full cooperation and approval of Defendant in preparation for the load-in and performances scheduled to take place on February 28, 2007.

20.    On January 28, 2007, Defendant failed to pay Plaintiff the sum of $22,500.00, as required under the Agreement.

21.    By various phonecalls and by e-mail dated February 2, 2007, Defendant notified Plaintiff that (i) Defendant would not be paying Plaintiff any sums due under the Agreement and (ii) Defendant would not be presenting *On Golden Pond* as agreed on February 28, 2007.

### FIRST CAUSE OF ACTION

22.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 21 as if fully set forth herein.

23.    At all times herein, Plaintiff was ready, willing and able to perform all of it's obligations under the Agreement.

24.    Defendant breached the Agreement with Plaintiff by failing to pay Plaintiff as follows: (i) the sum of $45,000.00, (ii) Ten (10%) Percent of the Net adjusted Gross Box Office Receipts for the two performances and (iii) Sixty (60%) Percent of the Net Adjusted Gross Box Office Receipts for the two performances.

25.    As a direct result, Plaintiff has been damaged in an amount in excess of Fifty Thousand ($50,000.00) Dollars plus interest from January 28, 2007 and demands judgment therefor.

9

## SECOND CAUSE OF ACTION

26.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as if fully set forth herein.

27.     Defendant deliberately and repeatedly represented to Plaintiff between mid August 2006 and early February 2007 that Defendant was ready, willing and able to present *On Golden Pond* at the Polk Theatre in Lakeland, Florida on February 28, 2007, that Defendant had already advertised *On Golden Pond*, that Defendant had already printed tickets for *On Golden Pond*, that Defendant had FedEx'd a signed contract addendum to Plaintiff and that Defendant would pay Plaintiff as follows: (i) the sum of $45,000.00 on or before January 28, 2007, (ii) Ten (10%) Percent of the Net adjusted Gross Box Office Receipts for the two performances and (iii) Sixty (60%) Percent of the Net Adjusted Gross Box Office Receipts for the two performances.

28.     Defendant knew that said representations were false at the time they were made.

29.     Plaintiff believed and relied upon said representations to its detriment as follows: (i) Plaintiff planned other aspects of the *On Golden Pond* Tour around the February 28, 2007 performances at Defendant's theatre, (ii) other bookings for February 28, 2007 were neither sought not accepted, (iii) bookings which were geographically inconsistent with the performances at Defendant's theatre were neither sought not accepted, (iv) unrecoupable expenses such as hotel reservations and site surveys were incurred by Plaintiff.

30.     As a direct result of Defendant's fraudulent representations to Plaintiff, Plaintiff has been damaged in an amount not less than One Hundred Thousand ($100,000.00) Dollars plus interest and demands judgment therefor.

31.     Plaintiff is entitled to punitive damages in an amount of not less than Three Hundred Thousand ($300,000.00) Dollars plus interest and demands judgment therefor.

10

**WHEREFORE**, it is respectfully requested that the Court grant Plaintiff judgment as follows:

<u>**First Cause of Action:**</u>    $50,000.00 in compensatory damages plus interest;

<u>**Second Cause of Action:**</u>    $100,000.00  plus interest in compensatory damages and
$300,000.00 plus interest in punitive damages;

plus such other relief which the court shall deem just and proper including the attorneys fees and costs

incurred herein.

Dated: New York, New York
      March 27, 2007

                    Yours, etc.,

                    LESLIE H. BEN-ZVI, ESQ.
                    *Attorney for Plaintiff*
                    1790 Broadway – 10th Floor
                    New York, NY 10019
                    (212) 719-5300 / 666-6656
                    Leslie@BenZviLaw.com

11

04/13/07   05:04pm   P. 016

## VERIFICATION

State of New York      )

County of New York  ) ss.:

      **JEFFREY FINN**, being duly sworn, deposes and says,

      1.     I am the Manager and sole Member of Plaintiff in the above-captioned matter.

      2.     I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge except as to those matters stated to be alleged upon information and belief and as to those matters, I believe them to be true.

      3.     The source of my knowledge and my information and belief is derived from my own knowledge of the events as well as the books and records maintained by Plaintiff.

                                                          JEFFREY FINN

Sworn to before me
on March 26, 2007

JASON BARUCH
Notary Public, State of New York
No. 02BA6106908
Qualified in New York County
Commission Expires March 16, 2008

_____
     Notary

04/19/07  05:04pm  P. 017

**Certification Pursuant to 22 NYCRR Section 130-1.1A**

LESLIE H. BEN-ZVI, ESQ., an attorney duly licensed to practice law in the State of New

York, upon the penalties of perjury, hereby certifies as follows:

Pursuant to Section 130-1.1a of the Rules of the Chief Administrator, the undersigned

certifies that to the best of his knowledge, information and belief, the instant action is not frivolous

as defined by 22 NYCRR Section 130-1.1c.

Dated: New York, New York
    March 27, 2007

LESLIE H. BEN-ZVI, ESQ.

# EXHIBIT B



234 West 44th Street, Suite 902, New York, New York 10036 * Tel (212) 840-4393; Fax (212) 840-4397

## ON GOLDEN POND
### Engagement Memorandum

**DATE:**   September 18, 2006
**TO:**     Leslie A. Sikora
**FROM:**   L. Glenn Poppleton / Ron Gubin
**CC:**     Jeffrey Finn
**RE:**     ON GOLDEN POND / Lakeland

ON GOLDEN POND starring Tom Bosley and Michael Learned is produced by JFP Touring, LLC. ("Producer") and booked exclusively by Avid Touring Group, Ltd. ("Avid"). The following performance schedule, local expenses, ticket prices, and basic engagement terms are confirmed for ON GOLDEN POND in Lakeland.

Please note: Before any public announcement of this attraction is made, including subscription announcements, Presenter must; a) return a signed copy of this Engagement Memorandum, indicating Presenter's acceptance of the terms and conditions set forth herein and also to the attached schedules A and B and Technical Rider; and, b) receive written authorization from the Producer's National Press Representative authorizing a public announcement of the engagement.

Our office will use this Engagement Memorandum and attachments to generate your Engagement Agreement. Please review and sign this Engagement Memorandum and attachments and return them to us so that we may issue the Engagement Agreement. This engagement is subject to the terms of the fully executed Engagement Agreement, which shall be derived, in part, from the terms agreed upon in this Engagement Memorandum. Thank you for helping us to expedite the contracting process.

ON GOLDEN POND must be included as part of the show package purchased by all subscribers on your main Broadway series.

**Presenter:**              Polk Theatre, Inc.

**Venue/City:**             Polk Theatre/Lakeland FL

**Load-in:**                Wednesday, February 28, 2007

**Engagement period:**      One (1) Day
                            Two (2) PERFORMANCES
                            Wednesday, February 28, 2007

**Performance Schedule:**   Wednesday Matinee at 3:00 pm and Evening at 8:00 pm

                            Except where travel dictates a special performance schedule, please allow 5 hours between start times on a two-show day. On any two (2) performance day when curtain times do not allow for required breaks between shows (as per applicable IATSE and AEA rules), a catered hot meal must be provided by and at the expense of the Presenter (as a Documented Expense of the Engagement). In the event that a catered meal is to be provided to any local or touring personnel, then catering must be provided for touring personnel to be present at the time of the meal (i.e. there should not be a situation when catering is provided but touring personnel are not invited to share in it).

                            Please confirm performance schedule above.

**Engagement Terms:**

As full compensation for the services of Producer, Presenter shall pay, to Producer in United States currency, by certified check, bank wire, money order or accepted bank draft, the following:

(i)    Forty Five Thousand United States Dollars ($45,000.00) (the "Fixed Guarantee"), plus

(ii)   Ten percent (10%) of the Net Adjusted Gross Weekly Box Office Receipts from the first dollar (the "Percentage Payment"), plus

(iii)  Sixty percent (60%) of the Net Adjusted Gross Box Office Receipts for the Engagement, which are in excess of the combined sum of: (i) the combined totals of the Fixed Guarantee and the Percentage Payment; and (ii) the Local Weekly Fixed Expenses and Documented and Substantiated Expenses as set forth in Schedule A (the "Overage").

A deposit in the amount of Twenty Two Thousand Five Hundred United States Dollars ($22,500.00) shall be due and payable on or before Monday, January 29, 2007 by wire transfer (Bank Information listed below) and shall be deemed to be an advance against the Fixed Guarantee.

The balance of the Fixed Guarantee shall be due and payable at 3:00 pm on the day of the performances hereunder by wire transfer.

The Percentage Payment shall be due and payable at intermission of the final performance of the Engagement.

The Overage for the Engagement is cumulative and shall be due during intermission of the final performance of the Engagement.

Final settlements shall be subject to Producer's written approval.

**Bank Information:**

**SEND TO BANK INFORMATION**

| | |
|---|---|
| **ABA or Routing #:** | 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 |
| **Bank Name:** | JP Morgan Chase Bank |
| **Bank Country:** | USA |
| **Bank Address:** | Ground Floor, 1 Chase Manhattan Plaza, New York, NY 10081 |

**SEND TO ACCOUNT INFORMATION**

| | |
|---|---|
| **Account #:** | 1512-0848-1065 |
| **Account Name:** | JFP Touring, LLC |
| **Account Holder's Address:** | 1501 Broadway, Suite 2003 New York, NY 10036 |
| **Currency (US $ or Other):** | USD |

**Expenses:**

See attached Schedule A for approved expenses.

| | |
|---|---|
| **Star Requirements:** | Per the Technical Requirements Rider, all star requirements shall be a **Presenter Expense.** |
| | Presenter will provide two (2) one-bedroom suites (one suite for each star) in a First Class deluxe accommodation for the duration of the stay during the Engagement. The suites must have a separate sleeping room from the parlor and all accommodations are to be approved by the company manager. |
| | Presenter shall provide two (2) private star dressing rooms, both of which shall contain a full bathroom, refrigerator, cot/sofa, fully lighted mirrors, chairs, coffee and tea service, sodas, and non-carbonated bottled water on ice as outlined in the Technical Requirements Rider. A fruit plate is to be provided on the Opening Night performance. If there is a private shared lounge between the two star dressing rooms, then all hospitality items may be placed in the lounge to be shared by the stars. |
| | Presenter shall provide limousine or Town Car transportation to and from airport, to the hotel, to and from hotel to theatre, and to and from ALL press events as outlined in Technical Requirements Rider. |
| **Advertising Commission:** | Not to exceed 15% on approved electronic, print, and outdoor advertising only. No commission on production or trade. |
| **Program Copy:** | The cost of printing the Company's 9.5-pages of program copy will be included in the local fixed expenses. |
| **Ticket Prices:** | Please see attached Schedule B for approved price scales. Box Office manifest shall reflect ALL seats in the theatre. No seats to be held off manifest. ("Corporate seats" and "Donor seats" etc., MUST appear on the Box Office manifest and be included in the calculation of gross box office receipts at full-value of the applicable seating tier.) **Presenter has informed Producer that there are One Hundred (100) kills/obstructed view seats, which will not be utilized, and no patron (paid or comp) will be seated in them (See Schedule B, Attached).** |
| | Public On-Sale Date of tickets: To Be Determined |
| **Discounts:** | All discounts will be as indicated on Schedule B. |
| **Deductions:** | See attached Schedule B for approved deductions. Not more than one (1) type of percentage sales commission may be charged on any one (1) ticket. Sales commissions must be calculated on ticket prices NET of restoration charges and taxes (if any). |
| | For purposes of Group Commissions, a group is defined as a minimum of ten (10) tickets at one performance, which are purchased by a single customer. There shall be no "bundling" of tickets from various performances or different buyers in determining a group minimum. |
| **Complimentary, Press Trade, or House tickets:** | There will be no complimentary or trade tickets of any kind without the prior written approval of Producer or Producer's representative. |

Form Revised 6/13/06 (Version 1.7)

The above notwithstanding, both Producer and Presenter shall receive four (4) complimentary tickets for Opening Night and two (2) complimentary tickets for all other performances. Producer must approve any additional complimentary tickets in writing in advance.

**Company House Seats:** Producer will require Twenty (20) house seats per performance for purchase in rows five (5) through fifteen (15) of the center Orchestra section under 48 hour hold, to be sold at regular box office prices.

**Advertising Budget:** Weekly advertising budget will be as indicated on Schedule A unless otherwise approved in writing by Producer or Producer's national press representative. All other marketing expenses are subject to the prior written approval of Producer or Producer's national press representative. Only those advertising and promotional materials furnished by the Producer can be used for the Engagement; any proposed changes shall be subject to the prior written approval of Producer or Producer's national press representative.

**Marketing:** The advance sale timeline and preliminary marketing campaign must be submitted to Producer's representative within 30 days of public or private announcement. The advertising budget and marketing plan must be submitted within 30 days of the on-sale and are subject to the prior written approval of the Producer's national press representative.

Excepting Presenter's season brochure which will be sent only to previous series subscribers, Presenter agrees not to advertise the Engagement until after December 10, 2006.

Please submit your marketing plans and advertising budget to the Producer's national press representative, Anita Dloniak, tel: (216) 398-1931, fax: (216) 661-4645 and e-mail: anitad@stratos.net.

**Technical Rider:** Attached is the preliminary Technical Rider as of August 9, 2006, which is subject to change. Presenter hereby agrees to the terms of the attached Technical Rider. The requirements and estimates set forth therein are subject to change due to local conditions.

Any Additional Costs due to local conditions will be a Fixed Engagement Expense.

**Special Provisions:** The form and manner of billing credits and sponsors on tickets shall be determined by Producer, and Presenter shall promptly and fully comply with said determination. Ticket stock should be printed as follows: "Show Sponsor Name TBA Presents ON GOLDEN POND".

Producer will have the right to purchase seats for the tour sponsor at regular box office prices.

There shall be no commission charged for any group booked by or on behalf of a company member through the company.

**Repeat Engagements:** Nothing in this agreement shall obligate Producer to afford subsequent presentation rights to the Presenter.

Form Revised 6/13/06 (Version 1.7)

**Booking Agent:**          It is expressly agreed that Avid Touring Group, Ltd. is authorized to act as Producer's designee on Producer's behalf, but that Avid Touring Group, Ltd. is not a producer or presenter of the Production or a party hereto, and that Avid Touring Group, Ltd. shall not be held responsible by Presenter for any of Producer's obligations hereunder, or by Producer for any of Presenter's obligations hereunder.

**Prevailing Terms:**       Where this Engagement Memorandum, attached Producer's schedules and/or Technical Rider conflicts with any terms in the Presenter's Rider and/or addendums attached hereto, the terms in this Engagement Memorandum, attached Producer's schedules and/or Technical Rider shall prevail.

Please sign below and return to Jessica Francis at Avid Touring Group, Ltd. as soon as possible. Should you have any questions, feel free to call.

Please advise Avid immediately if any of the provisions of this Engagement Memorandum and/or the attached schedules and Technical Rider do not accurately reflect your understanding of the agreement for the Engagement. Producer reserves the right to revoke confirmation of the Engagement in the event that the Presenter fails to return to Avid a non-modified copy of this Engagement Memorandum and its attachments which have been signed as Accepted and Agreed by the Presenter within ten (10) business days from the date of this Engagement Memorandum.

We are looking forward to a successful engagement of ON GOLDEN POND in Lakeland.

**ACCEPTED AND AGREED:**

_____  10/27/06
Polk Theatre, Inc.                Date
By: Leslie A. Sikora, Executive Director

encl.    - Schedule A (As of: 9/8/06)
         - Schedule B (As of: 9/8/06)
         - Technical Rider (As of: 8/9/06)

Form Revised 6/13/06 (Version 1.7)

As Of: 9/12/06

Lakeland FL - ON GOLDEN POND
**Polk Theatre**
Wednesday, February 28, 2007 ; 1 Performances

**Schedule B**

Ticket Prices listed below are Exclusive of Facility Fee

Wednesday Matinee at 3:00 PM and Wednesday Evening at 8:00 PM

| | | | TOTAL | |
|---|---|---|---|---|
| Section 1 | 690 | ~~$45.00~~ 38. | $31,050.00 | 26,220 |
| Section 2 | 262 | ~~$35.00~~ 27. | $9,170.00 | 7,074 |
| Section 3 | 352 | ~~$25.00~~ 20. | $8,800.00 | 7,040 |
| | 1304 | | $49,020.00 | → 40,334 |

x 2 performances

Gross Potential                                    ~~$98,040.00~~ 80,668

| TOTAL GROSS POTENTIAL | ~~$98,040.00~~ $ 80,668 |
|---|---|

There are One Hundred (100) kills/obstructed view seats, which will not be utilized, and no patron (paid or comp) will be seated in them. These seats are not reflected above. In the event that these seats are put on sale, they will be sold at $20.00 each, thereby increasing the Total Gross Potential for the Engagement by $4,000.00 for a new Total Gross Potential for the Engagement of $102,040.00.

ALL COMMISSIONS PAID NET OF ANY TAXES, SURCHARGES OR FACILITY/RESTORATION FEES NOT MORE THAN  ONE (1) TYPE OF PERCENTAGE SALES COMMISSION SHALL BE CHARGED ON ANY ONE (1) TICKET

SURCHARGES (Not Included in Ticket Price)
None

DEDUCTIONS (all deductions inclusive of credit cards)

| Window Sales w/ CC | 3% |
|---|---|
| Phones Sales/Internet | N/A |
| Outlet/Remote | N/A |
| Subscription Commissions | N/A |
| (Includes prorata share of subscription advertising and brochure costs) | |
| Third-Party Subscription Commission (if any) | N/A |
| Group Sales Commissions (Groups 10+) | N/A |
| (includes expenses) | |

DISCOUNTS

| Subscribers | N/A |
|---|---|
| Group Sales (10+) | 10% |

Presenter _(signature)_

As of: 9/12/06

Lakeland FL - ON GOLDEN POND
Polk Theatre
Wednesday, February 28, 2007

Schedule A

ESTIMATE OF DOCUMENTED & SUBSTANTIATED EXPENSES

| | Engagement |
|---|---|
| Stagehands/Technical Services | $7,000.00 |
| Utilities | $150.00 |
| Playbill Printing | $1,000.00 |
| Cleaning | $150.00 |
| General Expense/Theatre Rental | $1,200.00 |
| Hospitality | $500.00 |
| Hotel | $300.00 |
| House Manager | $264.00 |
| | $10,564.00 |
| Advertising | $2,000.00 |
| (TV, Radio, Print Media, Posters/Heralds) | |
| | $2,000.00 |

| TOTAL ENGAGEMENT DOCUMENTED & SUBSTANTIATED EXPENSES | $12,564.00 |
|---|---|

VARIABLE DOCUMENTED EXPENSES
None

| TOTAL ENGAGEMENT EXPENSES (Excl. Variable) | $12,564.00 |
|---|---|

PRESENTER shall furnish all items specified above and PRODUCER shall not be charged
for any item other than specified above. Advertising Expenses are not to be in amounts in
excess of that which is specified above without the prior written approval of PRODUCER. Any increases
to the estimated documented expenses are to be subject to discussions between both the
PRODUCER and the PRESENTER.

Presenter Initials