UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JFP TOURING, LLC,

                        Plaintiff,                    Docket No. 07-3341 (CM)(RLE)

        -against -

POLK THEATRE, INC.,

                      Defendant.

-------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW

LESLIE H. BEN-ZVI, ESQ. (LB-8639)
*Attorney for Plaintiff*
1790 Broadway – 10th Floor
New York, NY 10019
(212) 719-5300 / 666-6656
Leslie@BenZviLaw.com

## STATEMENT OF FACTS

The Court is respectfully referred to the Affidavit of Jeffrey Finn and the Exhibits annexed thereto for a full recitation of the facts herein.

## THE COURT HAS JURISDICTION OVER DEFENDANT

### The January 9th Agreement Expressly States That New York Law and Venue Applied Herein.

Paragraph 15 of the January 9th Agreement, entitled *Resolution of Disputes*, expressly provides as follows:

> This Agreement and the performance thereof shall be construed in accordance with the law of the State of New York applicable to contracts fully performed therein. Any controversy or claim arising out of, or relating to this Agreement, or any alleged breach thereof, shall be settled by binding arbitration before a single arbitrator in New York, New York, in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in the highest court of the forum, state or federal, having jurisdiction thereof. Each of the parties hereby consents and submits to the jurisdiction of the State and Federal courts located in the County of New York and consents to the venue thereof, and consents to service of process by registered or certified mail at the address to which notices are to be given and agrees that such service shall be deemed effective as if personal service had been made within New York State, New York County. (Emphasis added)[1]

(*See*, Finn Affidavit, Exhibit D)

### Defendant's Use Of Plaintiff To Modify A New York Union Contract Constitutes A New York Transaction

It is well-settled that the Court, in determining Defendant's motion to dismiss for lack of personal jurisdiction, shall consider Plaintiff's pleadings and affidavits in a light most favorable to Plaintiff. *(See, Linzer* v. *Blackwood Music, et. al.,* 904 FSupp 207, 211 (SDNY 1995) (citing, *Hoffritz for Cutlery, Inc.* v. *Amajac, Ltd,* 763 F2d 55, 57 (2d Circuit,1985).

---

[1]     Although said paragraph 15 contains certain Arbitration language, neither Plaintiff nor Defendant has invoked said clause and has elected instead to proceed in Federal Court.

As the Affidavit of Jeffrey Finn, the principal of Plaintiff, clearly states, not only did Defendant engage n a myriad of New York business, Defendant used Plaintiff as its New York *agent* by which to negotiate a modification of a New York union contract so that Defendant could use a non- union crew for the Florida load-in and load-out of Plaintiff's show.  Plaintiff did this for Defendant so that Defendant would save money.

Between December 7, 2006 and January 9, 2007, Plaintiff and Defendant spoke on the telephone and emailed with each other repeatedly regarding this union issue.  It necessitated a great deal of negotiation among Plaintiff, Defendant and IATSE, the New York union that represents Plaintiff's technical crew.  (*See,* Finn Affidavit, Exhibit E)

Defendant expressly requested that Plaintiff negotiate on Defendant's behalf and as Defendant's agent-in-fact regarding the New York IATSE contract and to obtain permission for Defendant to use a local non-union crew as to Defendant's presentation only.  Plaintiff successfully secured such a modification of the IATSE union contract to permit a non-union local crew to work side by side with Plaintiff's union crew from New York.

Since this union contract modification took place after the October 27th Agreement was executed, Defendant was already contractually obligated to present *On Golden Pond* and was, in effect, being helped out of a financial jam by Plaintiff beyond the call of duty.

On January 9, 2007, when Defendant executed four (4) copies of the January 9th Agreement, Defendant acknowledged the union contract modifications in its cover letter to Plaintiff in New York:

2

Enclosed please find four (4) executed copies of the Agreement for *On Golden Pond* appearing at our Theatre February 28, 2007 for two shows. <u>Alterations regarding the union section of the contract have been made following discussions between Ron Gubin and myself that non-union crew would be acceptable</u>. Should you require any additional information regarding this adjustment or the Agreement in general please call me at (863) 682-7553.

We look forward to a great show(s) and working with AVID.

(Emphasis added) (*See*, Finn Affidavit, Exhibit F)

In *Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 (Ct. Of Appeals, 2006), the New York Court of Appeals held that "New York's long-arm statute [(CPLR 302(a)(1)] provides that "a court may exercise personal jurisdiction over any non domiciliary . . . who in person or through an agent . . . transacts any business within the state . . . ". By this "'single act statute' . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" ( *citing, Kreutter v McFadden Oil Corp.,* , 71 NY2d 460, 467 [1988]).

At a minimum, Plaintiff's re-negotiation of the IATSE union contract on behalf of Defendant invokes the above-referenced statute. Defendant cannot dispute that this took place at its request, on its behalf and with Plaintiff acting as its agent-in-fact.

Defendant's other New York business contacts herein, as set forth in the Finn Affidavit and in the many emails of Defendant, are as follows:

(i)    All technical and other issues to be worked out – and there were many, as the emails and phonecalls indicate – were directed to the Crew and Staff for the production of *On Golden Pond,* <u>all</u> of whom were located in New York as follows:

3

General Manager: Jeffrey Finn, Jeffrey Finn Productions
Company Manager: Betsy Conner, Jeffrey Finn Productions
Booking Agent: Avid Touring Group Ltd.
Technical Supervisor: Peter Fulbright, Tech Production Services, Inc.
Production Stage Manager: Bernita Robinson
Head Sound: Sunil Rajan
Head Props: David Krugh
Wardrobe Supervisor: Kathy Guida

(ii)    daily box office reports were to be faxed to Plaintiff's New York fax number (212-575-2434) beginning on December 28, 2006, two months before the performance, and all inquiries regarding box office reports were to be directed to Plaintiff in New York at (212) 575-9600;

(iii)   $22,500.00 was to be wired to Plaintiff's bank account at JPMorgan Chase in New York on or before January 29, 2007;

(iv)   Defendant would have to comply with the union rules of three New York-based unions: Actors Equity, IATSE and ATPAM.. As a "bus and truck" tour that originated out of New York City and was derived directly from the Broadway production of the same name, this production of *On Golden Pond* was subject to the ongoing rules, regulations and supervision of the New York theatrical unions.

The production was designated by the three New York unions connected to the show – Actors Equity (actors), IATSE (crew) and ATPAM (press agents and company managers) – as having a New York "point of organization" or "point of origin." This means, in no uncertain terms, that although these unions may have offices around the United States, it is the New York offices that administer and oversee *ongoing* union compliance. Hence, *all union contracts were filed in New York* and all union issues were resolved through New York. References to these New York unions are found in the playbills and all advertising used by Defendant as well as throughout the Agreements, Schedules and Riders.

(v)    all advertising (content, marketing and budgeting) was to be approved in advance by and coordinated with Plaintiff's New York staff.

(vi)   All of the payroll plus all of the technical and other pre-show issues were dealt with in New York, not in Lakeland, Florida. From September 2006 to February 2007, in preparation of the eventual performances in Lakeland, the actors, sets, stage managers, drivers, technicians and other personnel associated with the performance of the Agreements were nowhere near Lakeland, Florida. They were either in New York or on tour.

(*See*, Finn Affidavit, Exhibit A)

4

*Kimco v Exch. Place Corp v Thomas Benz 2006 N.Y. App Div LEXIS 13386 (2d Dept., 2006)*, upon which Defendant relies, is distinguishable herein.  In *Kimco*, a New York plaintiff sued Florida defendants for breach of a real estate brokerage agreement by which said plaintiff marketed said defendants' properties nationally on the internet to potential buyers from anywhere on the globe.  The extent of the New York connections was the faxing back and forth of the agreements and a few follow up telephone calls by said defendants.

The Court held that said defendants' acts of faxing the executed contracts to New York and of making a few telephone calls to contact the plaintiffs in New York "do not qualify as purposeful acts constituting the transacting of business (*see Milliken v Holst*, 205 AD2d 508, 509-510 [1994]; *J. E. T. Adv. Assoc. v Lawn King*, 84 AD2d 744, 745 [1981])."

As the Court held, "the plaintiff marketed the defendants' properties nationally, not just within the State of New York, so the defendants, in contracting with the plaintiff, were not seeking to take advantage of a field particular to New York, such as the New York bond market particularly sought in *Deutsche Bank* (*supra*), or the New York media outlet firms sought in *Courtroom Tel. Network v Focus Media* (264 AD2d 351, 353-354 [1999]). In fact, the purchaser that the plaintiff allegedly procured for the West Palm Beach property is located in Florida."

Finally, the Court held, that "the plaintiff's activities within the state are not attributable to the defendants because they were not in any way directed by the defendants (*see J. E. T. Adv., supra* at 745)."

The instant matter tells quite a different story.  Defendant (i) sought out Plaintiff on the internet, (ii) was looking for a "New York bus and truck" tour, (iii) extensively negotiated and communicated with Plaintiff in New York by telephone and email, (iv) knowingly signed and mailed agreements containing references to New York law, New York venue and New York unions, (v) designated Plaintiff as its agent-in-fact to re-negotiate the IATSE union contrcat, (vi) accepted the services of a distinctly New York-created production, (vii) accepted the ongoing

services of Plaintiff's New York staff and crew, (viii) corresponded with New York extensively on the telephone and via email between September 2006 and February 2007.

Defendant also erroneously states that there was only one written agreement – the October 27th Agreement – when in fact there were two Schedules (A and B) plus a Technical Rider plus the January 9th Agreement.

By the standards of *Kimco* or any other authority relied upon by Defendant, Plaintiff does have jurisdiction over Defendant.

### VENUE SHOULD REMAIN IN NEW YORK

It is well-settled that pursuant to 28 U.S.C. § 1404(a), the standards by which to assess the propriety of venue are the following: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *See Linzer* v. *Blackwood Music, et. al.,* 904 FSupp 207 (SDNY, 1995).

Moreover, the burden is on the moving party – Defendant herein – and the Court has broad discretion to determine a change of venue based upon traditional notions of convenience and fairness.

Defendant presents only one potential witness: Leslie Sikora, its Executive Director, who, according to her own Affidavit, is "solely responsible for booking shows for the performing arts series on an annual basis" and who "personally conducts discussions and negotiations for booking performances over the telephone, by fax, mail and email between the touring companies and the Theatre, for performances which are scheduled to take place in Polk County, Florida," (*See*, Sikoroa Affidavit, paragraphs 11 and 12)

Plaintiff, however, presents the following witnesses, all of whom live and work in New York:

> Jeffrey Finn: General Manager
> Betsy Conner: Company Manager
> Richard Rainville: Associate General Manager

6

> Ron Gubin: Booking Agent at Avid Touring Group Ltd.
> L. Glenn Poppleton: Avid Touring Group Ltd.
> Jessica Francis: Operations Manager, Avid Touring Group Ltd.
> Melissa Rodes: Anita Dloniak & Associates: Press Representative
> Peter Fulbright: Technical Supervisor
> Bernita Robinson: Production Stage Manager
> Sunil Rajan: Head Sound
> David Krugh: Head Props
> Kathy Guida: Wardrobe Supervisor
> Brian Lawlor: Vice President, IATSE Union

### Plaintiff's Production of *On Golden Pond* Constitutes New York Property

As the Finn Affidavit indicates, the subject matter of the agreements entered into between the parties is Plaintiff's New York production of *On Golden Pond*. The New York aspects of Plaintiff's production of *On Golden Pond* are many and various:

> The entire supporting cast was auditioned, hired and rehearsed in New York.
>
> The entire sound design was created and built in New York.
>
> The entire lighting design was created and built in New York.
>
> All costumes were designed, created, fitted and sewn in New York.
>
> The entire Broadway set was designed and built in New York.
>
> The designers (sounds, lights costumes and sets) are all New York based.
>
> All sound equipment originated from Masque Sound in New York.
>
> All lighting equipment originated from GSD Lighting in New York.
>
> All Technical Supervisors are New York based.
>
> Most of the technical crew hired by the New York technical advisors are New York based.
>
> The advertisements specifically requested and used by Defendant were the same original advertisements and designs created for the Broadway stage in New York by a New York ad agency.
>
> Plaintiff's trucking company was Clark Trucking, from New York.

Virtually every aspect of Plaintiff's production of *On Golden Pond* originated in New York and should be considered "New York" property. That is precisely what Defendant contracted for. The show itself began as a Broadway production that concluded its New York run and then continued as a 'bus and truck" tour. Hence, the entire set and all costumes and props were created in New York for the New York stage. What made this production attractive to Defendants as a money-maker was precisely the fact that it was the New York production, not a college tour, not a summer stock production, not a local amateur theatre club show.

If Defendant didn't want this *bona fide* New York property, Defendant surely could have contracted with other, lesser productions. Yet because Defendant knowingly sought out Plaintiff on the internet and wanted this New York production, it is clear that the property is distinctly a "New York property." Accordingly, when Defendant entered into the agreements with Plaintiff, Defendant knew all too well that it was getting a New York Broadway production directly from New York.

### Defendant's Attorneys Have Offices In Both New York And Florida

Defendant makes much of the fact that it cannot defend itself in a New York action. Yet that is exactly what Defendant is doing. Defendant's attorneys, Ford & Harrison, have offices in Tampa and in New York, not to mention Atlanta, Birmingham, Dallas, Denver, Jacksonville, Los Angles Memphis, Miami, Orlando, Spartanburg and Washington. Defendants moved the Court for the admission *Pro Hac Vice* of William E. Grob, Esq., of the Tampa office, prior to the making of the Defendant's instant motion. Presently, Defendant is using a Ford & Harrison attorney from the New York office (Elana Gilaad, Esq.) and a Ford & Harrison attorney from the Tampa office (William E. Grob, Esq.).

It is Plaintiff who would be put at a great disadvantage should this matter be transferred to Florida. Plaintiff's counsel is a sole practitioner in New York with no office or affiliations in Tampa or anywhere else in Florida. For Plaintiff to retain new counsel in Florida who would

have become familiar with this case and start the litigation from scratch would be an undue hardship upon Plaintiff and would not serve the interests of justice.

## **CONCLUSION**

It is respectfully requested that Defendant's motion be denied in its entirety and that Plaintiff be awarded the costs, fees, disbursements and attorneys fees incurred in the defense of this motion.

Dated: New York, New York
     June 7, 2007

                                  Respectfully Submitted,

                                   LESLIE H. BEN-ZVI, ESQ. (LB-8639)
                                   *Attorney for Plaintiff*
                                   1790 Broadway – 10th Floor
                                   New York, NY 10019
                                   (212) 719-5300 / 666-6656
                                   Leslie@BenZviLaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

JFP TOURING, LLC,                                      **CERTIFICATION**
                                                       **OF SERVICE**

          Plaintiff,                         Index No. 601130/07

          Defendant.

-----------------------------------------------------------------------x

      **LESLIE H. BEN-ZVI, ESQ.,** an attorney duly licensed to practice before the Courts of

the State of New York, upon the penalties of perjury, hereby affirms as follows:

      On June 8, 2007, I served the within Memorandum Of Law upon counsel for Defendant

Polk Theatre, Inc. by emailing a true and accurate copy thereof and following up with a

confirmation email addressed to William E. Grob, Esq., WGrob@FordHarrison.com / Ford &

Harrison, LLP, 101 E. Kennedy Street, Suite 900, Tampa, FL 33602.  I received confirmation

emails for the above plus no objection from Mr. Grob.

Dated: New York, New York
       June 8, 2007

                                        _____
                                    LESLIE H. BEN-ZVI, ESQ.

10